# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**SARAH GILLMAN, WIDOW OF CLIFFORD GILLMAN,**
**Claimant Below, Petitioner**

**FILED**

December 11, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 19-0968** (BOR Appeal No. 2054102)
(Claim No. 950013482)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**MUTUAL MINING, INC.,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Sarah Gillman, widow of Clifford Gillman, by Counsel Robert M. Williams, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The West Virginia Office of Insurance Commissioner, by Counsel James W. Heslep, filed a timely response.

The issue on appeal is dependent's benefits. The claims administrator denied Mrs. Gillman's request for dependent's benefits on December 21, 2017. The Workers' Compensation Office of Judges ("Office of Judges") affirmed the decision in its March 11, 2019, Order. The Order was affirmed by the Board of Review on September 25, 2019.

The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mrs. Gillman, widow of Mr. Gillman, a coal miner, alleges that occupational pneumoconiosis materially contributed to her husband's death. On October 11, 1977, the Occupational Pneumoconiosis Board found that Mr. Gillman had 15% impairment due to occupational pneumoconiosis. Mr. Gillman was reevaluated on November 21, 1995, and July 8, 1999, and found to have no more than 15% impairment. Arterial blood gas studies performed on November 5, 1999, showed readings below the predicted normal ranges. The Office of Judges granted an additional 5% impairment for a total of 20% due to occupational pneumoconiosis on May 19, 2000.

A chest CT scan performed on November 29, 2007, showed post-surgical changes, pleural thickening and fluid in the right lung base, scattered mediastinal lymph nodes, scattered granulomas, a few nodules in the right lung base, and pulmonary fibrosis. On June 11, 2008, a chest CT scan showed changes from a partial right lung resection, unchanged lymph nodes, bilateral gynecomastia, interstitial fibrosis in both lungs, and scattered granulomas. The report indicated that the scan was performed for lung cancer status post chemotherapy and shortness of breath. A chest CT scan performed on December 17, 2008, showed no evidence for mass or lymphadenopathy, fibrotic changes in each lung, a few scattered granulomas, and a few nodular densities in each lung.

On May 15, 2009, a chest x-ray showed advanced pulmonary fibrosis. A chest CT scan was performed on June 12, 2009, and revealed chronic interstitial changes with several calcified and noncalcified nodules in both lungs, compatible with granuloma. On July 28, 2010, a chest CT scan showed chronic interstitial fibrotic changes in both lungs, a few scattered nodular opacities likely due to granulomas disease, unchanged lymph nodes, coronary artery calcification, pleural thickening, and a few calcified pleural plaques consistent with prior asbestos exposure. Mr. Gillman underwent a chest x-ray on March 14, 2011, that showed progression of extensive pulmonary fibrosis. A May 5, 2011, chest CT scan showed progressed pulmonary interstitial fibrosis with a few areas of subpleural end stage honeycomb lung. Myocardial perfusion testing showed no evidence of ischemia or previous infarction. An EKG was negative for ischemia on June 10, 2011. It was noted that the right ventricle was hypertrophied.

Treatment notes from Pulmonary Associates indicate Mr. Gillman was treated for shortness of breath due to a restrictive lung disease. It was noted on October 22, 2012, that Mr. Gillman also suffered from coronary artery disease. On January 23, 2014, Mr. Gillman was noted to be doing well overall and was going to participate in pulmonary rehabilitation. On July 10, 2014, Mr. Gillman presented with upper respiratory congestion. A chest x-ray showed stable end stage pulmonary fibrosis. On November 14, 2015, and March 26, 2015, pulmonary function studies showed moderate restrictive lung disease. Mr. Gillman was seen on June 8, 2015, for a hospital discharge follow up for pulmonary fibrosis, pneumonia, and asbestosis. On July 30, 2015, it was noted that Mr. Gillman's pulmonary status was declining. Pulmonary function studies showed moderate to severe restriction.

Treatment notes from David Lee Outpatient Cancer Center indicate Mr. Gillman was treated for lung cancer. He was diagnosed in August of 2005 and underwent a lobectomy and chemotherapy. On September 13, 2011, it was noted that there was no evidence of relapse. On

September 20, 2012, Mr. Gillman reported worsening shortness of breath. Examination showed bilaterally coarse scattered rales likely due to fibrosis. A chest x-ray was performed on March 21, 2012, which showed pulmonary fibrosis with chronic right pleural thickening. On January 2, 2013, a chest x-ray revealed chronic fibrotic changes.

March 21, 2013, treatment notes from Charleston Area Medical Center indicate Mr. Gillman was admitted for increased dyspnea and shortness of breath. Pulmonary function studies showed mild to moderate restrictive lung disease with reduced diffusion capacity. Mr. Gillman was discharged with diagnoses of acute gastritis, dehydration, chronic obstructive pulmonary disease, pulmonary fibrosis, rheumatoid arthritis, and osteoarthritis. Mr. Gillman was again admitted to the hospital on May 15, 2013. He reported chest pain and was diagnosed with atypical chest pain, coronary artery disease status post bypass, chronic obstructive pulmonary disease status post lung cancer, and pulmonary fibrosis.

Mr. Gillman sought treatment from Charleston Area Medical Center Emergency Room on March 20, 2015, for shortness of breath. An EKG showed atrial fibrillation initially, but a repeat study was normal. A chest x-ray showed pulmonary edema, cardiomegaly, and small pleural effusions. He was diagnosed with dyspnea, pneumonia, and tachycardia. Mr. Gillman was admitted to Charleston Area Medical Center on October 24, 2014, for fever, chills, wheezing, nausea, and weakness. On March 21, 2015, Mr. Gillman returned to the hospital for increased shortness of breath and wheezing. A chest x-ray showed bilateral chronic pleural effusion and increased vascular congestion. He was diagnosed with acute bronchitis, exacerbation of chronic obstructive pulmonary disease, and coronary artery disease.

On April 6, 2015, Mr. Gillman was admitted to Charleston Area Medical Center for shortness of breath and respiratory distress. Chest x-rays showed bilateral pleural effusion and interstitial changes. A CT angiogram showed findings consistent with pulmonary fibrosis and asbestos plaques. Mr. Gillman was diagnosed with acute exacerbation of chronic obstructive pulmonary disease and pulmonary fibrosis. On May 25, 2015, Mr. Gillman was transported to Charleston Area Medical Center for shortness of breath. He was diagnosed with exacerbation of chronic obstructive pulmonary disease, sinus tachycardia, viral bronchitis/human metapneumovirus, pulmonary fibrosis, and history of lung cancer.

A July 2, 2015, chest CT scan showed honeycombing suggestive of interstitial pneumonia. Asbestosis was also possible because calcified pleural plaques were present. A cytology report showed broncho-alveolar lavage, no malignant cells, and inflammation on August 7, 2015. Bronchial washing performed the following day showed moderate white blood cells. On August 9, 2015, a chest CT scan showed numerous pulmonary emboli.

An August 10, 2015, treatment note from Charleston Area Medical Center indicates Mr. Gillman was admitted for shortness of breath. He was diagnosed with numerous pulmonary emboli and dyspnea. A treatment note from Charleston Area Medical Center indicates Mr. Gillman was admitted for melanotic stool, progressive generalized weakness, and dyspnea on August 19, 2015. He was diagnosed with a gastrointestinal hemorrhage. A pan upper endoscopy showed no bleeding in the esophagus, stomach, or duodenum on August 21, 2015.

Mr. Gillman returned to Charleston Area Medical Center on November 2, 2015, and was admitted for acute bronchitis and exacerbation of chronic obstructive pulmonary disease. A stress test and echocardiogram showed a fixed defect in the left ventricle. A chest CT scan showed resolution of his prior pulmonary emboli with no recurrence. It also showed extensive pulmonary fibrosis and stable, nonspecific mediastinal adenopathy.

On March 12, 2016, Mr. Gillman was admitted to Charleston Area Medical Center for increased shortness of breath. He was in acute respiratory failure. Mr. Gillman was placed on a ventilator for about two weeks, but his condition continued to decline. He passed away on March 31, 2016. An autopsy of the lungs was performed on April 1, 2016. It showed bilateral interstitial pneumonia/fibrosis superimposed on subacute pneumonia. There was evidence of coal dust, iron, and silica crystals in the lung tissue consistent with Mr. Gillman's work history. Pleural plaques were present, but there was no evidence of asbestosis or progressive pulmonary fibrosis.

In its October 31, 2017, findings, the Occupational Pneumoconiosis Board found that at the time of his death, Mr. Gillman was eighty-two years old. The Board found an extensive history of emphysema and post-inflammatory scarring. After review of the extensive medical evidence, the Board concluded that occupational pneumoconiosis was not a material contributing factor in Mr. Gillman's death. The claims administrator denied a request for dependent's benefits on December 21, 2017.

In a January 23, 2019, final hearing, Jack Kinder, M.D., testified on behalf of the Occupational Pneumoconiosis Board that the Board examined Mr. Gillman three times, the last being in July of 1999. Mr. Gillman had thirty years of occupational exposure. The Board made an x-ray diagnosis of occupational pneumoconiosis. Mr. Gillman reported a seven-year history of cigarette smoking and stated that he quit in 1982. The Board determined that Mr. Gillman had no more than 15% permanent partial disability. Dr. Kinder stated that the autopsy report noted acute respiratory failure superimposed on chronic respiratory failure. Mr. Gillman also had a Klebsiella, a type of bacteria that causes pneumonia and other serious infections. Dr. Kinder noted that the autopsy was limited to the lungs. He also noted that Mr. Gillman was admitted to the hospital for a spine procedure and that he developed a subsequent infection. He was then placed on a ventilator and developed ileus, which means that his bowels stopped working. He passed away about two weeks later.

Dr. Kinder opined that Mr. Gillman died as a result of respiratory and other system problems. He testified that the autopsy of the lungs showed bilateral interstitial pneumonia and fibrosis with superimposed pneumonia. Dr. Kinder opined that Mr. Gillman suffered from pulmonary fibrosis, which the Board related to occupational exposure. Dr. Kinder noted that Mr. Gillman suffered from chronic, severe rheumatoid arthritis, which can cause pulmonary fibrosis, interstitial fibrosis, and honeycombing in the lung. This can be difficult to distinguish from occupational fibrosis, so the most common thing to look for is asbestos bodies. The pathology showed no indication of asbestos bodies or coal macules. Dr. Kinder explained that there were some dust particles found but they were in the lymph nodes only. Dr. Kinder stated that Mr. Gillman's type of lung cancer is unrelated to occupational dust exposure. Dr. Kinder opined that

occupational pneumoconiosis was not a material contributing factor in Mr. Gillman's death. Johnsey Leaf, M.D., and Bradley Henry, M.D., also of the Occupational Pneumoconiosis Board, concurred with Dr. Kinder's opinions.

The Office of Judges affirmed the claims administrator's denial of dependent's benefits in its March 11, 2019, Order. West Virginia Code § 23-4-6a provides that "the Office of Judges shall affirm the decision following hearing unless the findings of the [Occupational Pneumoconiosis] Board are clearly wrong in view of the reliable, probative, and substantial evidence on the whole record." After reviewing the record and specifically, Dr. Kinder's testimony, the Office of Judges determined that the Occupational Pneumoconiosis Board's findings are not clearly wrong. It concluded that occupational pneumoconiosis was not a material, contributing factor in Mr. Gillman's death. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on September 25, 2019.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mrs. Gillman failed to show that the Occupational Pneumoconiosis Board's findings were clearly wrong and that the Office of Judges and Board of Review erred in relying on its conclusions.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 11, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison